IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**SHEILA WHALEN**,

      Plaintiff,

vs.                                                                    No. CIV-06-1092 MCA/WDS

**CURRY COUNTY
ex rel. CURRY COUNTY
ADULT DETENTION CENTER,**

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on *Defendant's Motion to Dismiss and Memorandum in Support* [Doc. 4], filed January 5, 2007. Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court grants the motion with respect to Counts II, III, and IV and declines to exercise supplemental jurisdiction over the state-law claim asserted in Count I.

## I. BACKGROUND

The following facts are taken from Plaintiff Sheila Whalen's *Complaint for Willful Infliction of Injury, Discrimination, and Wrongful Termination* [Doc. 1] and are accepted as true for purposes of the motion to dismiss. See Deephaven Private Placement Trading, Ltd. v. Grant Thornton & Co., 454 F.3d 1168, 1171 (10th Cir. 2006).

Ms. Whalen is a former employee of Defendant Curry County, where she worked as a detention officer at Defendant's Adult Detention Center. On May 5, 2005, Ms. Whalen

was assaulted by an inmate as she attempted to pass him his lunch.  The inmate's cell door pass-through was broken and, despite a number of requests, had not been repaired as of May 5.  Consequently, Ms. Whalen opened the cell door to give the inmate his food.  When she did so, the inmate kicked the door open; jumped on Ms. Whalen; knocked her to the floor; and hit her five or six times on the left side of her head.  [Doc. 1 at 1-2].

A deputy came to Ms. Whalen's assistance and cornered the inmate, but he broke free and continued attacking Ms. Whalen, hitting her on her right arm and left hand with a small garbage can.  During the attack, Ms. Whalen's co-workers made several calls to the control-room operator, demanding that the door to the holding area be opened.  The controller did not open the door immediately, but once it was opened several other officers responded to the situation.  Ms. Whalen received emergency room care and returned to work on May 8, 2005.  [Doc. 1 at 2].

Once Ms. Whalen returned to the Detention Center, however, she was required to see and have frequent contact with the inmate who attacked her and now spoke to her about the incident.  Ms. Whalen began having nightmares, and on June 10, 2005 experienced a flashback while at work.[1]  She again sought emergency room care and was diagnosed with

---

[1] Also on June 10, 2005, Ms. Whalen was instructed to deliver medications to inmates and work the halls of Defendant's Annex.  She contends that, although she was able to perform these tasks without experiencing aftereffects of the attack, she was removed from this new assignment approximately one hour later because her superiors failed to follow protocol in assigning her these duties.  It is not clear from the pleadings whether the flashback occurred before or after Ms. Whalen's hour at the Annex.  In any event, Defendant's director of personnel subsequently offered Ms. Whalen two alternative positions: (1) working at Defendant's Juvenile Detention Center, which carried the same attendant risks and stressors as her job at the Adult Detention Center; and (2) working as a receptionist/clerk, a position for which Ms. Whalen

post-traumatic stress disorder ("PTSD"). The emergency room physician determined that Ms. Whalen could not return to work until she received counseling "and saw a reputable doctor." [Doc. 1 at 3].

On June 28, 2005, Ms. Whalen saw Drs. Barrie Ross and Ann Hammond, both of whom also diagnosed her with PTSD. On July 13, 2005, Dr. Ross determined that Ms. Whalen could not return to work. [Doc. 1 at 3]. On August 17, 2005, Dr. Hammond released Ms. Whalen for work "but stated that [she] could not work at the Detention Center because she would be likely to experience further trauma or retrigger past trauma in the same environment as the attack." [Id. at 4]. On August 24, 2005, Dr. Ross similarly determined that Ms. Whalen could not return to work in a jail or detention-center setting. Ms. Whalen attempted to discuss these limitations with Defendant's director of personnel, but he told her to submit a letter of resignation, which she did on August 26, 2005.

On November 9, 2006, Ms. Whalen filed her four-count *Complaint*, alleging a state-law tort claim for willful infliction of injury (Count I); failure to accommodate, in violation of the Americans with Disabilities Act ("ADA") (Count II); wrongful termination, in violation of the ADA (Count III); and violations of the Age Discrimination in Employment Act ("ADEA") (Count IV). [See generally Doc. 1]. Defendant now moves to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim. [Doc. 4 at 1].

---

concedes she was not qualified. [Doc. 1 at 4].

## II. ANALYSIS

### A. Standard of Review

In order to withstand a motion to dismiss made pursuant to Fed.R.Civ.P. 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1974 (2007). In handing down Twombly, the United States Supreme Court invalidated the longstanding rule that a complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The Court explained that "after puzzling the profession for 50 years, this famous observation has earned its retirement." Twombly, 127 S.Ct. at 1969. In order to survive dismissal under the new standard, a plaintiff must "nudge[ her] claims across the line from conceivable to plausible . . . ." Id. at 1974. In other words, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." Ridge at Red Hawk, L.L.C. v. Schneider, --- F.3d ----, 2007 WL 1969681, at *3 (10th Cir. 2007) (emphasis in original).

### 1. The ADA

To establish a prima facie case of discrimination in violation of the ADA, a plaintiff must demonstrate that she (1) is a disabled person as defined by the ADA; (2) is qualified, with or without reasonable accommodation, to perform the essential functions of her job; and

(3) suffered discrimination by her employer because of her disability.  Zwygart v. Bd. of County Com'rs of Jefferson County, Kan., 483 F.3d 1086, 1090 (10th Cir. 2007).  Assuming without deciding that Ms. Whalen's PTSD renders her disabled for purposes of the ADA, the Court must next determine whether she is qualified, and does so by reference to the following two-part analysis:

> First, the [C]ourt determines whether [Ms. Whalen] can perform the essential functions of the job . . . . Second, if ( but only if ) the [C]ourt concludes that [Ms. Whalen] is unable to perform the essential functions of the job, the [C]ourt determines whether any reasonable accommodation by the employer would enable h[er] to perform those functions.

Mason v. Avaya Commc'ns, Inc., 357 F.3d 1114, 1118 (10th Cir. 2004) (*quoting* Davidson v. America Online, Inc., 337 F.3d 1179, 1190 (10th Cir. 2003).

Ms. Whalen asserts that when she returned to work on June 10, 2005, she was instructed "to deliver medication and work the halls at Annex[, which she] was able to do . . . without suffering the side effects from the assault." [Doc. 1 at 4].  She worked at the Annex for approximately one hour before she was made to stop because the assigning officer "failed to go through the proper chain of command in giving [her] her new assignment." [Id.].  According to Ms. Whalen, reassignment to the Annex would have constituted a reasonable accommodation.  [Id.].

However, also on June 10, 2005, Ms. Whalen experienced flashbacks while at work and was compelled to leave early to seek emergency treatment.[2]  Within the next few weeks,

---

[2] It is unclear from the pleadings whether Ms. Whalen experienced flashbacks before or after she spent time in the Annex.

both Drs. Ross and Hammond had diagnosed Ms. Whalen with PTSD and within approximately one month, on July 13, 2005, "Dr. Ross determined that [Ms. Whalen] could not return to work." [Doc. 1 at 3]. The next month, Dr. Ross became even more specific, "determin[ing] that [Ms. Whalen] could not return to work at a jail or detention center setting." [Id. at 4-5]. Physical attendance at work is generally an essential function of one's job. See Mason, 357 F.3d at 1122. The accommodation Ms. Whalen seeks is reassignment to the Detention Center Annex, where she maintains that she successfully dealt with inmates without experiencing aftereffects of the assault. [See Doc. 1 at 3-4; doc. 6 at 11-12]. But Ms. Whalen's own medical provider has determined that she is unable to return to work "*at a jail or detention center setting.*" [Doc. 1 at 4-5 (emphasis added)]. Because the professional medical judgment is that Ms. Whalen cannot return to work at the detention center, she is not, for purposes of the ADA, qualified to perform the essential functions of her job. See Swonke v. Sprint Inc., 327 F.Supp.2d 1128, 1133-34 (N.D.Cal. 2004) (employee with knee injury was not qualified for ADA purposes where his own doctors refused to clear him to return to work). For this reason, Ms. Whalen's ADA claims (Counts II and III) must be dismissed.

### 2. The ADEA

The ADEA makes it unlawful for an employer to fail or refuse "to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a). According to Ms. Whalen, Defendant violated the ADEA because

"[g]iven [her] age, Defendant should have realized that her reaction to the assault would have been different than someone younger[, but that i]nstead of working around the differences that came with [Ms. Whalen's age], Defendant attempted to ignore them." [Doc. 1 at 5]. Although the precise theory set forth by Ms. Whalen is not entirely clear, it appears that she is contending that, because of her age, she was treated differently from similarly situated, younger coworkers and, therefore, her ADEA claim is one for disparate treatment.

In order to establish a prima facie case of disparate treatment in violation of the ADEA, a plaintiff must demonstrate that she (1) is a member of the class protected by the statute; (2) suffered an adverse employment action; (3) was qualified for the position at issue; and (4) was treated less favorably than others not in the protected class. " Sanchez v. Denver Pub. Schs., 164 F.3d 527, 531 (10th Cir.1998).[3]  Once the plaintiff establishes her prima facie case, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for the action.  If the defendant does so, the plaintiff must show that the proffered reason is pretextual.  Id.

As an initial matter, the Court notes that there is no indication in the record as to Ms. Whalen's age.  For purposes of this motion, however, the Court assumes without deciding that at all relevant times Ms. Whalen was at least 40 years old. See 29 U.S.C. § 631(a).  Ms. Whalen's ADEA claim must fail, however, because as previously explained, her medical

---

[3] To prove disparate treatment, the plaintiff also must prove discriminatory motive. Indeed, in a disparate-treatment case brought pursuant to the ADEA, liability depends on whether the employee's age actually motivated the employer's complained-of decision. Hazen Paper Co. v. Biggins, 507 U.S. 604, 609 (1993).

7

providers determined on August 24, 2005 that she could not return to work in a jail or detention center. [See Doc. 1 at 4-5].  Because she could not work, Ms. Whalen was not qualified for her position.  Because she was not qualified for her position, she is unable to establish a prima facie case of disparate treatment in violation of the ADEA.[4]

It is also reasonable to interpret Ms. Whalen's ADEA claim as one for discriminatory discharge, given that she asserts that Defendant "pushed" and "bullied" her into resigning her position after the attack. [Doc.6 at 13].  A claim for discriminatory discharge in violation of the ADEA requires evidence that the plaintiff was (1) within the statutorily protected age group when terminated; (2) performing the job satisfactorily; (3) discharged; and (4) replaced by a younger person.  Miller v. Eby Realty Group LLC, 396 F.3d 1105, 1111 (10th Cir. 2005).  In the instant case, Ms. Whalen has not alleged that she was replaced, much less that she was replaced by a younger person.  Because Ms. Whalen's ADEA claim fails no matter the precise theory (disparate treatment, discriminatory discharge) on which it is premised, Count IV must be dismissed.

### 3. Willful Infliction of Injury

In Count I of her *Complaint*, Ms. Whalen asserts that Defendant willfully inflicted injury upon her by failing to repair the cell-door pass through, which, in turn, allowed the attacking inmate to assault her when she attempted to pass him his lunch.  In asserting this

---

[4] Defendant makes the valid point that Ms. Whalen is actually alleging that she should have been treated differently from her co-workers because of her age. [See Doc. 4 at 9].  Ms. Whalen appears to confirm this when she asserts that "[i]nstead of working around the differences that came with [her] age, Defendant attempted to ignore them." [Doc. 1 at 5].

8

claim, Ms. Whalen invokes this Court's supplemental jurisdiction.

Section 1367 of Title 28 of the United States Code provides, in pertinent part, that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." 28 U.S.C. § 1367(a). Pursuant to subsection (c), however, the Court may decline to exercise its supplemental jurisdiction if, among other things, it has dismissed all claims over which it had original jurisdiction. 28 U.S.C. § 1367(c)(3). In other words, once "the bases for federal subject matter jurisdiction have been extinguished[,] the district court may decline to exercise continuing 'pendent or supplemental jurisdiction over [the] plaintiff's state claims." Lancaster v. Indep. Sch. Dist. No. 5, 149 F.3d 1228, 1236 (10th Cir. 1998) (dismissing without prejudice plaintiff's claims for, *inter alia*, breach of contract after having entered summary for defendant on plaintiff's First and Fourteenth Amendment claims); see also Taylor v. Meacham, 82 F.3d 1556, 1564 n.1 (10th Cir. 1996) ("Once a federal court dismisses claims over which it has original jurisdiction, it may decline to exercise supplemental jurisdiction over related state law claims.").

In the instant action, dismissal of Counts II, III, and IV extinguishes the basis for federal subject matter jurisdiction. See Lancaster, 149 F.3d at 1236. Accordingly, the Court declines to exercise its supplemental jurisdiction over Ms. Whalen's willful-infliction-of-injury claim. See 28 U.S.C. § 1367(c)(3). In so declining, the Court has considered whether the nature and extent of pretrial proceedings, judicial economy, convenience, and fairness

9

would be served by retaining jurisdiction.  See Anglemyer v. Hamilton County Hosp., 58 F.3d 533, 541 (10th Cir. 1995).  The Court is not convinced that these factors weigh in favor of retaining jurisdiction.  The provisions of the Workers' Compensation Act and the New Mexico Tort Claims Act that require interpretation for resolution of Ms. Whalen's willful-infliction-of-injury claim[5] are creatures of state law best suited to adjudication in a state court.  Notions of comity and federalism demand that a state court try such claims in the first instance, absent compelling reasons to the contrary.  See Thatcher Enters. v. Cache County Corp., 902 F.2d 1472, 1478 (10th Cir. 1990).  In addition, the Court's decision not to exercise supplemental jurisdiction is not necessarily fatal to Ms. Whalen's state-law claim, as 28 U.S.C. § 1367(d) may provide for the tolling of any limitations period regarding this claim.  For these reasons, Ms. Whalen's claim for willful infliction of injury will be dismissed without prejudice.  See Lancaster, 149 F.3d at 1236 (where district court had entered summary judgment for defendant on plaintiff's federal claims, affirming district court's decision to dismiss without prejudice plaintiff's state-law claims).

---

[5] In Count I, Ms. Whalen argues that Defendant is liable pursuant to Delgado v. Phelps Dodge Chino, Inc., 34 P.3d 1148 (N.M. 2001).  In Delgado, the New Mexico Supreme Court determined that proof of actual intent to injure is no longer a requirement for a plaintiff seeking to sue an employer in tort and held, instead, that when an employer intentionally inflicts or willfully causes a worker to suffer an injury that would otherwise be exclusively compensable under the Workers' Compensation Act, that employer may not enjoy the benefits of exclusivity, and the injured worker may sue in tort.  Delgado v. Phelps Dodge Chino, Inc., 34 P.3d 1148, 1155-56 (N.M. 2001).

### III. CONCLUSION

For the reasons stated herein, the Court concludes that dismissal is merited with respect to Counts II, III, and IV of Ms. Whalen's *Complaint for Willful Infliction of Injury, Discrimination, and Wrongful Termination*. Because such a dismissal extinguishes any basis for federal subject matter jurisdiction, the Court declines to exercise supplemental jurisdiction over Ms. Whalen's remaining state-law claim (Count I). For these reasons, the Court will grant *Defendant's Motion to Dismiss and Memorandum in Support* [Doc. 4] as to Ms. Whalen's ADA and ADEA claims and dismiss without prejudice the claim for willful infliction of injury.

**IT IS, THEREFORE, ORDERED** that *Defendant's Motion to Dismiss and Memorandum in Support* [Doc. 4] is **GRANTED** as to Counts II, III, and IV;

**IT IS FURTHER ORDERED** that Plaintiff Sheila Whalen's claim for violations of the Americans with Disabilities Act, as set forth in Count II, is **DISMISSED WITH PREJUDICE**;

**IT IS FURTHER ORDERED** that Plaintiff Sheila Whalen's claim for wrongful termination, as set forth in Count III, is **DISMISSED WITH PREJUDICE**;

**IT IS FURTHER ORDERED** that Plaintiff Sheila Whalen's claim for violations of the Age Discrimination in Employment Act, as set forth in Count IV, is **DISMISSED WITH PREJUDICE**;

**IT IS FURTHER ORDERED** that Plaintiff Sheila Whalen's claim for willful infliction of injury, as set forth in Count I, is **DISMISSED WITHOUT PREJUDICE**;

**SO ORDERED** this 26th day of September, 2007, in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
United States District Judge